## INDIANAPOLIS STREET RAILWAY COMPANY *v.* SCHMIDT.

[No. 20,324. Filed June 8, 1904. Rehearing denied October 13, 1904].

CARRIERS.—*Personal Injuries.*—*Complaint.*—*Sufficiency.*—Where a complaint by a passenger against a carrier charges that such carrier negligently ran its car at a high and dangerous rate of speed into one of its switches, thereby derailing its coach and injuring such passenger, it is sufficient, since in such case general averments of negligence are sufficient. *pp. 363, 364.*

NEGLIGENCE.—*Proximate Cause.*—Where a complaint alleges that by reason of the carrier running its coach at a high and dangerous rate of speed into one of its switches, thereby derailing such coach, inflicting personal injuries on such passenger plaintiff, it is sufficiently shown that the proximate cause of such injury was the negligent running of such coach at such speed. *p. 364.*

Indianapolis St. R. Co. *v.* Schmidt.

NEGLIGENCE.—*Proximate Cause.*—The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation, and those merely incidental or instruments of a controlling agency are not proximate though they may be nearer in time to the result. *pp. 364, 365.*

PLEADING.—*Complaint.—Charging that Servant was Within Scope of Employment.*—Where a complaint by a passenger against a carrier charges "that the defendant, through and by its servant in charge of said car, negligently ran said car," etc., the necessary implication is that such servant was acting within the scope of his employment, and is sufficient. *p. 365.*

DAMAGES.—*Excessive.*—Where the verdict of the jury is not so evidently erroneous and extravagant as to lead to the necessary conclusion that such jury were subject to an improper influence, it will not be interfered with as excessive. *p. 366.*

TRIAL.—*Instruction as to Financial Condition of Plaintiff.*—An instruction asked by a carrier, in an action by a passenger for damages for personal injuries, containing the statement that "this rule does not depend in any way upon the plaintiff's financial condition, or upon his desire to earn money," is properly refused, as in such action it is improper for the court to comment upon such passenger's estate or financial condition. *pp. 366, 367.*

SAME.—*Instructions Asked Covered by Those Given.*—Where instructions asked by a party are covered by those given by the court, it is proper for the court to refuse those asked. *p. 368.*

SAME.—*Injury to Passenger.—Burden of Proof After Injury Shown.—Res ipsa Loquitur.*—Where it is shown, in an action by a passenger against a carrier, that such passenger was injured, it is incumbent upon such carrier to produce evidence to excuse itself, negligence of the carrier being presumed from such injury. *pp. 368, 369.*

SAME.—*Instruction on "Burden of Proof."*—Where the court instructs the jury that if the evidence upon any question was evenly balanced, the party having the burden must fail, and in another instruction tells them that if "all other things were exactly equal in all respects, the witnesses of equal intelligence and credibility, having equal opportunities of knowledge, testifying with equal candor, intelligence and fairness, the weight of the evidence under such circumstances should be considered to be on the side having the greater number of witnesses," and further instructs that the weight does not depend upon the number of witnesses, but upon all the evidence in the case, while containing conditions that could hardly be supposed to exist, still such instruction could do no harm to either party. *pp. 370, 371.*

SAME.—*Refusal to Strike Out Evidence.*—The refusal to strike out from plaintiff's testimony the words "they were going so fast" is not reversible error. *p. 371.*

SAME.—*Aggravation of Injuries.*—The testimony of a physician that the plaintiff's injuries would be aggravated by riding on a locomotive was

not harmful to defendant, when the court told the jury that the plaintiff could recover nothing on account of the aggravation of his injury by any act or neglect of his own. *p. 371.*

EVIDENCE.—*Expressions of Pain.*—Expressions of pain and suffering are competent evidence in a personal injury case, and it is not necessary that the exact language be used. *pp. 371, 372.*

From Marion Circuit Court (10,736) ; *H. C. Allen,* Judge.

Action by Joseph Schmidt against the Indianapolis Street Railway Company for damages for personal injuries. From a judgment rendered on a verdict for $4,000, the defendant appeals. Transferred from the Appellate Court under §1337u Burns 1901. *Affirmed.*

*F. Winter* and *W. H. Latta,* for appellant.

*B. K. Elliott, W. F. Elliott, F. L. Littleton* and *W. J. Beckett,* for appellee.

DOWLING, J.—The appellee was a passenger upon appellant's railroad, and was injured while being so carried. The complaint alleged that the accident and injury were caused by the negligence of the appellant in running its car at a high and dangerous rate of speed. A demurrer to the complaint was overruled. The answer was a general denial. A verdict was returned for the plaintiff below, a motion for a new trial was overruled, and judgment was rendered on the verdict. Error is assigned upon these rulings.

The objections taken to the complaint are that it does not charge that the act of negligence complained of was the proximate cause of the injury, and that it does not aver that the servant of the appellant in charge of the car at the time of the injury was acting within the scope of his employment. There is no merit in either point. It appears from the complaint that the appellee was a passenger for hire, and was being carried over appellant's road. He occupied a seat in the car, and was exercising ordinary care for his own safety. The appellant negligently ran its car at a high and dangerous rate of speed into a switch main-

tained by it on its own line, in consequence of which negligent conduct the car ran off the track and against a pole in the street. The collision threw the appellee from his seat in the car to the floor and against a stove, and the conductor of the car and other passengers were thrown upon him, causing severe injuries to him. Nothing else can be understood from the averments of the complaint than that the negligent conduct of the appellant in. running its car at a high rate of speed into a switch on the main line caused the car to leave the track, with the result that it ran against a pole, threw the appellee to the floor, and injured him. The negligent running of the car was the proximate cause of the accident. The fact that the car left the track and ran against an obstacle in the street, which suddenly and violently arrested its progress, thereby hurling appellee to the floor and against the stove, and throwing other persons on him, were the direct and natural consequences of the negligence charged. In view of the very strict responsibility of carriers for injuries to passengers, no great particularity is necessary in the description of the negligence by which the injury was occasioned. When an injury to a passenger occurs without his fault, negligence on the part of the carrier is presumed, and the latter can excuse himself only by showing that he exercised a very high degree of care to prevent the occurrence of such accidents as that causing the injury.

In the common law forms of declarations against a carrier for an injury to a passenger through the negligence of the carrier the allegation generally was that the defendant "so carelessly, improperly, negligently, and unskilfully, drove and managed the said [coach] that   *   *   *   by and through the mere carelessness, negligence, unskilfulness, and misconduct, of the said defendant, the said [coach] was overturned, by means of which said several premises the right arm of the said plaintiff became and was fractured and broken," etc. 2 Chitty, Pleading (13th

Am. ed.), 363. Averments of negligence even more general than this were allowed. *Idem.* 364.

The proximate cause of an accident or injury is sometimes described as the immediate cause, the nearest cause, the actual or direct cause, or the efficient cause. *Louisville, etc., R. Co. v. Lucas* (1889), 119 Ind. 583, 6 L. R. A. 193; *Terre Haute, etc., R. Co. v. Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Chicago, etc., R. Co. v. Williams* (1892), 131 Ind. 30; *Indianapolis Union R. Co. v. Houlihan* (1901), 157 Ind. 494, 503, 54 L. R. A. 787.

It was said by Mr. Justice Strong in *Insurance Co. v. Boon* (1877), 95 U. S. 117, 130, 24 L. Ed. 395: "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster. A careful consideration of the authorities will vindicate this rule. Mr. Phillips, in his work on insurance, §1097, in speaking of a *nisi prius* case of a vessel burnt by the master and crew to prevent its falling into the hands of the enemy *(Gordon v. Rimmington* [1807], 1 Camp. 123), says, the 'maxim *causa proxima spectatur* affords no help in these cases, but is, in fact, fallacious; for if two causes conspire, and one must be chosen, the more scientific inquiry seems to be, whether one is not the efficient cause, and the other merely instrumental or merely incidental, and not which is nearer in place or time to the consummation of the catastrophe.' "

It is evident from the allegations of the complaint that there was but one efficient cause of the accident. The other events were the results and natural consequences of that cause. 21 Am. and Eng. Ency. Law (2d ed.), 485, 486.

The appellant owed to the appellee the duty of carrying

him safely to his destination on appellant's road, so far as his safety could be secured by the exercise of care commensurate with the dangers likely to occur and reasonably to be anticipated from that mode of transportation. It was guilty of a breach of that duty in running the car, in which the appellee was a passenger, so fast and so carelessly that it dashed into a switch and was thrown from the track. This was one of the dangers likely to occur, and which ought to have been anticipated and avoided by the appellant. As a result of this carelessness, the appellee was severely injured. In the regular sequence of the occurrences stated in the complaint we find every element of a legal liability for a tort, and it appears unmistakably that the negligent manner in which the car was run was the efficient cause of the injury to the appellee. *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74, 91, 92; *Chicago, etc., R. Co.* v. *Grimm* (1900), 25 Ind. App. 494; *Indianapolis Union R. Co.* v. *Houlihan, supra; Louisville, etc., R. Co.* v. *Kendall* (1894), 138 Ind. 313; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533; *Louisville, etc., R. Co.* v. *Jones* (1887), 108 Ind. 551; *Louisville, etc., R. Co.* v. *Hendricks* (1891), 128 Ind. 462, 464; *Louisville, etc., R. Co.* v. *Nolan* (1893), 135 Ind. 60; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Sherlock* v. *Alling* (1873), 44 Ind. 184; *Carrico* v. *West Va., etc., R. Co.* (1891), 35 W. Va. 389, 14 S. E. 12, 52 Am. and Eng. R. Cas. 393; *Virginia Cent. R. Co.* v. *Sanger* (1858), 15 Gratt. (Va.) 230; *Philadelphia, etc., R. Co.* v. *Derby* (1852), 14 How. (U. S.) 468, 14 L. Ed. 502; *Jackson* v. *Tollett* (1817), 2 Stark. 34, 3 Eng. C. L. 307; *Crofts* v. *Waterhouse* (1825), 3 Bing. 319, 11 Eng. C. L. 160.

In regard to the objection that it does not appear that the servant in charge of the car was acting within the scope of his employment, it is sufficient to say that the averment "that the defendant through and by its servant

in charge of said car, negligently ran said car," etc., nec-
essarily implies that the servant was acting within the scope
of his agency. Any other language would be equally open
to criticism. The averments as to the servant could not be
misunderstood, and they were sufficient to show that the
person in charge of the car was acting within the scope
of his employment when he negligently ran it along the
tracks of the appellant at an improper and dangerous rate
of speed.

The reasons for which a new trial was demanded, dis-
cussed by counsel for appellant, are, (1) that the damages
assessed by the jury are excessive; (2) that the court erred
in refusing to give instructions numbered one and two
asked for by the appellant, and in giving instructions num-
bered five, six, seven, nine, ten, eleven, and twelve; and
(3) that it erred in admitting certain evidence.

While the amount of the damages assessed by the jury
was large, the injury was serious. The earning capacity
of the appellee was upwards of $100 per month, and the
effects of the accident are likely to be permanent. The
facts proved fully justified the jury in assessing the sum
allowed, and we find no indication in the record that in
awarding it they were subject to any improper influence.
It is true that evidence was introduced by the appellant
which tended to show that the injuries of the appellee were
probably aggravated by his failure to refrain from labor,
and to take proper care of himself. But the question of
the amount of damages sustained by the appellee, consid-
ered in connection with all the facts relating to his care
or lack of care of himself, was one to be determined by the
jury, and their decision is not so evidently erroneous and
extravagant as to require us to interfere and set it aside.

The first instruction tendered and requested by the ap-
pellant was properly refused. After stating that the ap-
pellee could not recover for any aggravation of his in-
juries caused by his own neglect or imprudence, it con-

tained, among other things, the following: "This rule does not depend in any way on the plaintiff's financial condition, or upon his desire to earn money." An allusion of this kind to the financial condition of the appellee, and his desire to earn money, was uncalled for and improper. The statement of the appellee in his testimony "that he was not a millionaire" may or may not have been competent evidence, but it furnished no excuse for comment by the court upon the value of his estate, or his desire to increase it.

The concluding part of the instruction under review was as follows: "If the defendant is liable at all in this action, it is liable only to the extent that the plaintiff would be damaged by its alleged negligent acts in case he gave to his injuries all reasonable and necessary medical attention until he could be cured." The court, by its ninth instruction, covered every aspect of the duty of the appellee to heal himself of his injuries, to take proper care of his health, and to do nothing to aggravate his condition, or protract the period of his recovery. It informed the jury that he could recover nothing for the results of a neglect of these duties, and it concluded with the very words of instruction number one tendered by the appellant.

Instruction number two, requested by appellant, was in these words: "If you find from the evidence in this cause that the car upon which the plaintiff was riding was thrown from the track by some stone or other obstruction, and that the defendant was not negligent, as charged in the complaint, in the operation of the car, then I instruct you that the defendant would not be liable in this action, even though the evidence does not show in what manner the stone or obstruction was placed on or by the track so as to derail the car." So far as this instruction was applicable to the issues made by the pleading and to the evidence in the cause, it amounted to nothing more than a statement that, if the plaintiff had failed to prove his complaint, and

it appeared that the accident resulted from a cause not alleged therein, the defendant would not be liable. Other instructions given by the court made this view of the case so plain that no further direction on that subject was necessary. Moreover, we find that the court, by its seventh instruction, charged the jury fully and particularly upon the effect of evidence that the accident was caused by the obstruction of the switch by a stone, in almost the language of the instruction asked for by the appellant. The principal difference between the instruction given and the instruction asked for was that the court very properly told the jury that the appellant must have exercised the requisite care in running its car and in avoiding the danger occasioned by the presence of the stone.

The fifth instruction given by the court is objected to on the ground that it informed the jury, in substance, that when an accident happens to a passenger, a presumption of negligence on the part of the carrier arises, and that in such case it is incumbent on the carrier to produce evidence which will excuse its *prima facie* failure of duty. The rule stated in the instruction has received the sanction of this court in numerous cases, and we perceive no reason for abrogating or modifying it. *Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264, 274, 54 Am. Rep. 312, and cases cited; *Brighton* v. *White* (1891), 128 Ind. 320; *Terre Haute, etc. R. Co.* v. *Sheeks* (1900), 155 Ind. 74, 94-96, and cases cited.

The suggestion of counsel that the jury is to determine from the facts proved whether the accident resulted from the negligence of the appellant or from want of care of the appellee is without force in this case. The appellee was entirely passive, and there was no pretense, and there could be none, that any act or omission of his had anything to do with the accident or injury. The facts proved authorized but one presumption or inference, which was that the accident and the consequent injury to the appellee were occa-

sioned by the negligence of the appellant. No voluntary action of the appellee contributed to the injury, nor was he in any manner or degree an actor in the occurrence. For this reason the doctrine stated in *Pittsburgh, etc., R. Co.* v. *Aldridge* (1901), 27 Ind. App. 498, *Dresslar* v. *Citizens St. R. Co.* (1898), 19 Ind. App. 383, *Abbitt* v. *Lake Erie, etc., R. Co.* (1898), 150 Ind. 498, 518, and like decisions, while correct in terms, does not apply to the facts of this case.

It was stated in *Terre Haute, etc., R. Co.* v. *Sheeks, supra,* at page 95: "While the burden is upon the passenger suing to maintain the affirmative of the issue, still under such circumstances, the mere happening of the accident is at least *prima facie* evidence of the negligence upon the part of the company or carrier, and it will be incumbent upon the latter to produce evidence which will excuse the *prima facie* failure of duty on its part; or, in other words, it has the burden of proving, in order to rebut the presumption of negligence, under the circumstances, that the accident could not have been avoided by the exercise of the highest practical care and diligence."

Proof of the accident and injury to the appellee, while being carried as a passenger by the appellant, in its car, over its road, in connection with the formal matters stated in the complaint, raised a presumption of negligence on the part of the appellant, and it then devolved on the appellant to show by the evidence in the cause a legal excuse for the accident. If the accident was caused by a stone in the switch, and if this fact, under the circumstances in proof, could be considered sufficient to relieve the appellant from liability for the injury to the appellee, the burden of proving that a stone was in the switch, that its presence was the proximate cause of the accident, and such facts connected with the obstruction as exonerated the company from legal responsibility, was upon the appellant, and it was required to show by the evidence that the accident so occasioned

could not have been avoided by it by the exercise of the highest practicable care and diligence. The fifth instruction correctly stated the law upon this branch of the evidence, and was proper.

Similar objections are urged against the sixth instruction, and for like reasons that instruction must be sustained.

The seventh instruction has been considered and approved in another part of this opinion, and requires no further discussion.

The ninth instruction given by the court, and which related to the duty of the appellee to take proper care of himself after the injury, and which admonished the jury that he could recover nothing for any aggravation of his injury and disability occasioned by his own neglect of proper care, has also been considered in connection with the second instruction asked for by the appellant and contains a correct statement of the law.

The tenth instruction given was confined to a statement of the law relating to the measure of damages, and we find nothing objectionable in it.

The eleventh instruction, while inaccurate in its attempted definition of the phrase "burden of proof," was harmless in that respect. It properly declared that, if the evidence upon any question in the case was evenly balanced, the decision of the jury on that question should be against the party having the burden of proving such issue.

By the twelfth instruction, the jury were told, that if all other things were exactly equal in all respects, the witnesses of equal intelligence and credibility, having equal opportunities of knowledge, testifying with equal candor, intelligence, and fairness, the weight of the evidence under such circumstances should be considered to be on the side having the greater number of witnesses. The jury were further cautioned in this instruction as follows: "But it does not necessarily follow that the weight of evidence is

on the side which has the greater number of witnesses. It does not depend upon the number of witnesses testifying one way or another, but upon all the evidence in the case, whether direct or circumstantial. It is the evidence which is greater in weight and credibility." If such a remarkable situation of exact equipoise in the character, credibility, knowledge, candor, intelligence, and fairness of the witnesses as is described in this instruction could by any possibility exist, it would be difficult to find another or safer method of deciding the question of the existence or nonexistence of the facts to which the testimony related than to give the greater weight to the greater number. In such a dilemma a jury might well ask the court as a matter of law by what rule they were to be governed. But there is no real difficulty here. No such situation was shown to exist in this case, and therefore, even if erroneous, the instruction did not and could not harm the appellant.

The refusal of the court to strike from the testimony of the appellee the words, "they were going so fast," did not constitute reversible error. Whether competent or incompetent, the statement could not have exercised a material influence upon the jury in deciding the issues of the case. They had all the facts before them, including testimony as to the speed of the car, and if the evidence objected to was the expression of an opinion, and not the statement of a fact, it could not prevail against the proof; if a just inference from the facts, it could do no harm.

The statement of Dr. Tinsley, that the sprain and injury of the appellee would be aggravated by riding on a locomotive, was not harmful to the appellant. On the contrary, it was calculated to reduce appellee's damages; for, as the jury were properly told by the court, the appellee could recover nothing on account of the aggravation of his injury by any act or neglect of his own.

The expression of pain and suffering, or the indication of such condition by groans or inarticulate cries, was com-

petent evidence, and the court did not err in refusing to strike out that part of the evidence of the witness Dolby in which he said the appellee, while lying on the floor of the car, and unable to rise, "was complaining of his side." No rule of evidence requires that the exact words used by a sufferer should be proved. In *Yost* v. *Ditch* (1839), 5 Blackf. 184, the evidence was, "I saw Ditch the same day, and heard him complain that his arm was sore." Held competent. *Town of Elkhart* v. *Ritter* (1879), 66 Ind. 136; *Puett* v. *Beard* (1882), 86 Ind. 104; *Carthage Turnpike Co.* v. *Andrews* (1885), 102 Ind. 138, 52 Am. Rep. 653; *Board, etc.,* v. *Leggett* (1888), 115 Ind. 544. Besides, points like this are not of sufficient importance to require serious consideration. Error in admitting this evidence, if error was committed, would not justify us in reversing the judgment.

This case is a very plain one both on the law and the evidence. The plaintiff, a locomotive engineer, forty-eight years old, having employment, and earning $104 per month, was a passenger on appellant's railroad, and paid his fare. He took his seat in the car, and was guilty of no fault or want of care. The car was run in the darkness of the early morning of November 15, 1900, at a speed of twenty-five or thirty miles an hour, and dashed into or against a switch. It was thrown from the track, and came in violent collision with a pole standing eighty-three feet from the road. The plaintiff was thrown to the floor and against a stove, and other passengers, one of whom weighed 225 pounds and another 140 pounds, fell on him. The feet of the man weighing 225 pounds struck him in the back. The plaintiff was badly injured "by and through the mere carelessness, negligence, unskilfulness, and misconduct of the defendant," without the slightest fault or negligence on his part. His injuries confined him to his bed for two months, and to his house for a month longer. He suffered great pain, and the effect of the injury is

probably permanent. He may not be able to continue in his occupation as a locomotive engineer more than four years. The verdict of the jury was sustained by the evidence, and was reasonable and just. It appears to this court that the merits of the case were fairly tried and determined in the court below, and there is nothing in the record which authorizes us to disturb the judgment.

Judgment affirmed.